# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| CARL D. GORDON, | ) | Civil Action No. 7:16cv00285 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JOHN COMBS, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Carl D. Gordon, a Virginia inmate proceeding *pro se*, filed a verified complaint pursuant to 42 U.S.C. § 1983 naming staff of Wallens Ridge State Prison ("Wallens Ridge") as defendants in both individual and official capacities. Gordon contends that defendants violated the First and Fourteenth Amendments of the Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, by not allowing him to participate in the Fast of Ramadan ("Ramadan") in 2014. Gordon seeks declaratory relief, damages, "[p]lus any other relief the Court deems just, proper, and adequate." Defendants filed a motion for summary judgment, and Gordon responded, making this matter ripe for disposition.[1] Having considered the record, I conclude that defendants' motion for summary judgment must be granted in part and denied in part, and I will refer the case for mediation.

## I.

Gordon is an adherent of the religion The Nation of Islam ("NOI"). He avers he has observed Ramadan for thirty years as part of his NOI practice. The Virginia Department of Corrections ("VDOC") allowed Muslim inmates to observe Ramadan in 2014 between June 28 and July 27. Gordon explains that his religious beliefs allow him to make up a missed Ramadan fast at any time.

---

[1] Gordon also filed a motion for reconsideration of the order granting him an extension of time to respond to the motion for summary judgment. I find no valid basis to reconsider the grant of time and will deny the motion.

Defendant Gilbert, who was Gordon's Counselor, gave Gordon a Ramadan sign-up form on May 12, 2014. Gordon signed the form the same day, indicating he wanted to participate. Per policy, he deposited it in the institutional mail for delivery to the Treatment Department before the June 3 deadline. He attached a request form with the participation form, asking for confirmation that his name was added to the participation list. Gordon never received the request form back.[2]

Approximately a week later, Gilbert handed Gordon a second sign-up form upon Gordon's request. Gordon signed it and handed it back to Gilbert.

On approximately June 15, Gilbert told Gordon that Gordon's name was on the official participation list because Gordon's name was on Gilbert's unofficial list. Gilbert explained that he created his unofficial list from the official participation list prepared by the Treatment Department.

On approximately June 16, Gordon heard Gilbert tell another inmate that the other inmate was not on Gilbert's participation list. The inmate objected, explaining how he had sent his sign-up form to the Treatment Department before the deadline. Two days later, Gilbert informed the inmate that the inmate's name was added to the participation list.

On June 18, Gilbert told Gordon that his name should be on the participation list because his name was on Gilbert's unofficial list, which Gilbert believed was the same as the official list. To confirm Gilbert's answer, Gordon inquired with the Food Service Department whether his name was on the official list. Defendant Broyles, who was the Food Service Manager, did not bother to check the official list and simply told Gordon to talk to Gilbert.

---

[2] Gordon explains that in 2012 and 2013, he had sent similar request forms along with the Ramadan sign-up forms and that they had been returned to him to confirm his participation.

2

Three days before Ramadan started, staff placed signs on the doors of inmates whose names were on the official list. Because Gordon's door was not marked, Gordon objected and sent request forms to the Chaplain, the Institutional Programs Manager, a major, and defendants Gilbert, Unit Manager Dennis Collins, Warden Gregory Holloway, Assistant Warden John Combs, and Treatment Department Secretary Hyder.

On June 25, Collins responded to the request form. Collins said he would inquire with the Food Service Department whether Gordon was on the participation list and would have Gordon added if Gilbert confirmed that Gordon should be on the list. Combs similarly responded, "Please inform your Unit Manager[,] [Collins]. I will talk to Gilbert." Gordon sent Collins a request form that night as a reminder to check with the Food Service Department.

On June 26, Combs told Gordon that Combs would speak with Gilbert at the earliest opportunity. Later that day, a major and defendant Captain Cope spoke with Gordon. The major instructed Cope to tell the Food Service Department to add Gordon to the participation list if Gilbert believes Gordon is supposed to be on it. Collins told Gordon, "Gilbert said [your] name had been on Treatment's [Ramadan] list but Food Service said it's not on theirs." Collins left Gordon's door abruptly and without further discussion.

Gilbert talked to Gordon twice on June 27. In the morning, Gilbert said he had been certain on June 15 or 16 that Gordon was on the participation list and would check on fixing Gordon's omission from the list. In the evening, Gilbert said that Gordon had not been mentioned during Gilbert's separate meetings with Comb, Collins, and Cope earlier that day and the day before.

On June 27, a sergeant told Gordon that Collins had emailed staff to put Ramadan participation signs on three inmates' doors, but Gordon was not mentioned.

3

On June 29, Gordon began sending request forms to the Food Service Department to learn about the inmates who had been accidentally left off the participation list in 2014 but were added later. Gordon also inquired why, unlike those inmates, he had not yet been added to the participation list. Broyles refused to give Gordon any information and denied his requests.

On July 2, Cope told Gordon at his cell door that he would talk to Gilbert about Gordon's participation. Cope refused Gordon's requests that Cope immediately resolve the situation by speaking with Gilbert, who was standing nearby in the pod, at Gordon's cell door.

On July 15, Hyder responded to one of Gordon's informal complaints about being omitted from the participation list. Hyder said Gordon had not been added to the participation list because she never received Gordon's sign-up forms.

On July 17, Gilbert responded to Gordon's informal complaint about Gilbert's, Collins', Combs', and Cope's apparent inability to correct Gordon's omission from the participation list. Notably, Gilbert acknowledged, "It was stated to you that you had submitted the paperwork you should be on the list, I told you to write the [C]haplain for confirmation."

On July 20, Gordon submitted a regular grievance about staff's unwillingness to investigate or correct his omission from the participation list. Gordon asked, *inter alia*, to observe Ramadan for thirty days any time in 2014 due to staff forcing him to miss the official Ramadan observance. On August 20, Holloway deemed the regular grievance unfounded. Holloway reiterated that Gilbert said Gordon "had submitted the paperwork" and "should be on the list[.]" Nonetheless, Holloway relied on the Chaplain's statement that the Treatment Department never received Gordon's sign-up forms, and Holloway did not authorize a make-up Ramadan observance.

Gordon alleges defendants violated the Equal Protection Clause of the Fourteenth Amendment because five other inmates who had been accidentally left off of the participation list in 2014 were added to the list before Ramadan while Gordon was not. Gordon argues that Gilbert, Broyles, Collins, Combs, Cope, and Hyder violated the First Amendment and RLUIPA for willfully failing to add Gordon to the list to correct the erroneous omission. Gordon similarly faults Holloway for the grievance decision and not allowing Gordon to participate in a thirty-day make up Ramadan observance before the end of 2014.

## II.

Defendants filed a motion for summary judgment, arguing, *inter alia*, that they are entitled to qualified immunity. Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If, however, the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A plaintiff may not amend a complaint through

argument in a brief opposing summary judgment. *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

Qualified immunity protects government officials in their individual capacities from claims for damages for acts or omissions arising during their discretionary functions unless: "(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006); *see, e.g., In re Allen*, 106 F.3d 582, 593 (4th Cir. 1997). Before the events of this lawsuit, "a prisoner ha[d] a 'clearly established . . . right to a diet consistent with his … religious scruples,' including proper food during Ramadan" under both the Free Exercise Clause and RLUIPA in its most elemental form. *Lovelace v. Lee*, 472 F.3d 174, 198-199 (4th Cir. 2006) (quoting *Ford v. McGinnis*, 352 F. 3d 582, 597 (2d Cir. 2003)). "A prison official violates this clearly established right if he intentionally and without sufficient justification denies an inmate his religiously mandated diet." *Id.* at 198-99. "[A] genuine dispute of material fact will preclude summary judgment on qualified immunity." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).

### III.

Defendants are entitled to summary judgment as to damages sought under RLUIPA and sought against them in their official capacities. RLUIPA does not authorize damages against a public official under the Spending Clause of the United States Constitution.[3] *See Sossamon v. Texas*, 563 U.S. 277, 282 n.1, 293 (2011) (prohibiting damages claims against state officials in

---

[3] Gordon does not contend that RLUIPA applies under the Constitution's Commerce Clause. *See, e.g., Washington v. Gonyea*, 731 F.3d 143, 146 (2d Cir. 2013) (declining to consider "whether RLUIPA authorizes individual-capacity suits under the imprimatur of the commerce clause" where plaintiff "pled no facts" pertaining to interstate commerce).

their official capacity under the Spending Clause); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (same for individual capacity). Also, the Eleventh Amendment prohibits Gordon from recovering damages against defendants in their official capacities. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995). Accordingly, Gordon cannot recover damages under RLUIPA or against defendants in their official capacities.

**IV.**

Defendants assert that the RLUIPA claims are moot because RLUIPA does not authorize an award of damages against defendants and equitable relief is not possible. Defendants explain that Gordon's claims concern Ramadan in 2014 at Wallens Ridge, that holiday ended on July 27, 2014, and Gordon was transferred from Wallens Ridge to a different VDOC facility.

The RLUIPA claims are not moot. While the complaint does not specifically seek equitable relief, it does seek "any other relief the Court deems just, proper, and adequate." *See Wall v. Wade*, 741 F.3d 492, 496 (4th Cir. 2014) ("[W]e are comfortable reading Wall's prayer for any relief deemed 'just, proper, and equitable' as encompassing a claim for injunctive relief. An appropriately liberal reading of the amended complaint indicates that Wall sought to prevent the defendants from wrongfully limiting his observance of Ramadan in the future through the issuance of an injunction." (internal quotation marks omitted)). Gordon repeatedly references a desire for a make-up Ramadan in accordance with his religious beliefs, and the record indicates that VDOC policy allows, or at least has allowed in the recent past, make-up observances outside the traditional time of Ramadan at any VDOC prison. Accordingly, defendants' motion for summary judgment must be denied as to the mootness of the RLUIPA claims because injunctive relief remains possible.

7

## V.

Disputes of material facts preclude summary judgment for the RLUIPA and First Amendment claims against Gilbert, Broyles, Collins, Combs, Cope, Hyder, and Holloway. However, defendants are entitled to summary judgment for the Fourteenth Amendment claim.

### A.

An inmate's right to religious exercise under the First Amendment and RLUIPA must be balanced with a prison's institutional needs of security, discipline, and general administration. *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987). A "substantial burden" on religious exercise occurs under the First Amendment or RLUIPA if it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand."[4] *Lovelace*, 472 F.3d at 187; *see, e.g.*, *Patel v. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008) ("When the significance of a religious belief is not at issue, the same definition of 'substantial burden' applies under the Free Exercise Clause, RFRA, and RLUIPA."). RLUIPA affords heightened protection to a prisoner's religious exercise, whereas the First Amendment is more deferential to prison official's decisions impacting religious exercise.

RLUIPA prohibits government officials from imposing a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden furthers a

---

[4] I assume for purposes of this opinion that Gordon's desire to observe Ramadan is a personal practice that is both sincerely held and rooted in religious belief. *See, e.g.*, *Cutter*, 544 U.S. at 725; *see also* 42 U.S.C. § 2000cc-5(7) (defining "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief").

compelling governmental interest and is the least restrictive means of furthering that interest.[5] 42 U.S.C. § 2000cc-1(a). "The least-restrictive-means standard . . . requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Jehovah v. Clarke*, 798 F.3d 169, 177 (4th Cir. 2015) (quoting *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015)).

In contrast, a correctional policy or practice that substantially burdens an inmate's First Amendment right is valid if it is reasonably related to legitimate penological interests. *Lovelace*, 472 F.3d at 199. Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right … remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

*Id.* at 200 (citing *Turner v. Safley*, 482 U.S. 78, 89-92 (1987)); s*ee Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (recognizing the prisoner has the burden to disprove the validity of a prison regulation pursuant to the *Turner* analysis).

A claim under either RLUIPA or the First Amendment requires showing a defendant's conscious or intentional interference with the plaintiff's religious rights. *Wall*, 741 F.3d at 500 n.11. "Allowing negligence suits to proceed under RLUIPA [or the First Amendment] would undermine . . . deference [to the experience and expertise of prison and jail administrators] by exposing prison officials to an unduly high level of judicial scrutiny." *Lovelace*, 472 F.3d at

---

[5] "Government" includes the defendants, who work for the VDOC. 42 U.S.C. § 2000cc-5(4)(A).

194; *see Shaheed v. Winston*, 885 F. Supp. 861, 868 (E.D. Va. 1995), *aff'd*, 161 F.3d 3 (4th Cir. 1998). Consequently, less than intentional conduct is not sufficient to meet the fault requirements under RLUIPA or the First Amendment.

I conclude that the inability to observe Ramadan in 2014 constituted a substantial burden under both RLUIPA and the First Amendment. Gordon also satisfies his obligation under *Overton* to show that defendants' application of the Ramadan approval policies or practices were not reasonable under the First Amendment.[6] By applying the sign-up policy in such a rigid manner and avoiding all attempts to verify Gordon's participation, the sign-up restriction lost whatever "valid, rational connection" to the VDOC's interest in limiting Ramadan participation to those inmates who sincerely desired participation. Furthermore, verifying whether Gordon was on the participation list and adding him if he was not is a patently obvious, easy alternative to ignoring his pleas. Actually verifying the participation list would have had, at most, a *de minimis* effect on security staff, inmates, and the allocation of prison resources. Similarly, defendants fail to establish for purposes of summary judgment that their unwillingness to verify or correct Gordon's omission from the participation list satisfied a least restrictive means of compelling a governmental interest.

Although Gordon describes violations of a clearly established right, disputes of material facts preclude summary judgment. It cannot be properly determined from the record whether Gilbert, Broyles, Collins, Combs, Cope, and Holloway intentionally interfered with Gordon's ability to participate in the official or a make-up Ramadan or whether Gilbert, Broyles, Collins, Combs, Cope, and Holloway were just negligent in failing to adequately investigate.

---

[6] Gordon does not note whether his personal religious beliefs compel any other religious exercise besides Ramadan.

10

Furthermore, it is not clear whether Hyder did receive the sign up forms but, because of her alleged retaliatory motive, did not add Gordon to the official participation list.[7]

**B.**

Defendants are entitled to summary judgment on the equal protection claim about other Muslim inmates in segregation being allowed to participate in Ramadan. The Equal Protection Clause requires that persons similarly situated be treated alike. *Plyer v. Doe*, 457 U.S. 202, 216 (1982). To state such a claim, a plaintiff must demonstrate that he has been treated differently from others who are similarly situated and that the unequal treatment was the result of intentional discrimination.[8] *Morrisson v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Here, nothing in the record suggests that Gordon's alleged unequal treatment resulted from intentional discrimination compared to the other Muslim inmates allowed to participate in Ramadan. *See Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 819 (4th Cir. 1995) (stating that a plaintiff must show more than the fact that "a benefit was denied to one person while conferred on another" to prove that he was intentionally or purposefully discriminated against). Accordingly, defendants are entitled to summary judgment for the equal protection claim.

---

[7] Gordon faults Hyder, Collins, and Gilbert for not adding his name to the participation list as retaliation for his "numerous written complaints against [Wallens Ridge] personnel." I decline to construe a free-standing First Amendment retaliation claim from this simple accusation as it lacks evidentiary support and because it is clear from Gordon's filings that he seeks a remedy concerning his religious exercise only. However, the accusations are relevant to adjudicating the RLUIPA and First Amendment claims. *See, e.g.*, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (recognizing an inmate must present more than a conclusory allegation of retaliation to state such a claim); *see also Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015), *cited by Hoye v. Gilmore*, No. 7:15cv203, 2017 U.S. App. LEXIS 10699, at *2, 2017 WL 2615449, at *1 (4th Cir. June 16, 2017) (discussing the requirements for a free-standing First Amendment retaliation claim).

[8] If the plaintiff does not make this threshold showing, a court need not determine whether the alleged disparate treatment was justified under the appropriate level of scrutiny. *Ephraim v. Angelone*, 313 F. Supp. 2d 569, 573-74 (E.D. Va. 2003).

## VI.

For the reasons stated, I will deny Gordon's motion for reconsideration and grant in part and deny in part defendants' motion for summary judgment. Defendants filed a motion for a protective order to stay discovery until the issue of qualified immunity is resolved. Inasmuch as it has now been decided, I will deny the motion for a protective order. Finding it appropriate to do so, this case is referred to the Honorable Robert S. Ballou, United States Magistrate Judge, for the purposes of mediation to be held within the next sixty days.[9]

**ENTER**: This 25th day of September, 2017.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[9] The parties are advised that any information provided during the proceeding shall be treated confidentially in accordance with Local Civil Rule 83(e).